## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCOTT HEISS, Individually and on Behalf of All Other Persons Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>A123 SYSTEMS INC., DAVID P. VIEAU, and DAVID PRYSTASH, )<br><br>Defendants ) | Civil Action No.:<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Scott Heiss ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding A123 Systems Inc. ("A123" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased A123 securities between February 28, 2011 and March 23, 2012, both dates inclusive (the "Class Period"), seeking to recover damages caused by

defendants' violations of the federal securities laws and to pursue remedies under § 10(b) Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against the Company and certain of its top officials.

2.      A123 designs, develops, manufactures and sells advanced, rechargeable lithium-ion batteries and battery systems.

3.      On March 26, 2012, the Company disclosed that it would incur costs of over $55 million in the next several quarters to replace battery modules and packs that might be defective. The $55 million represents approximately one quarter of the Company's projected annual revenue for 2012, which A123 has estimated between $230 million and $300 million. Specifically, five auto customers received parts that likely contained defective prismatic cells.

4.      On these revelations, A123 shares declined $0.21 per share or more than 12%, to close at $1.49 per share on March 26, 2012.

5.      On March 28, 2012, Dan Galves ("Galves"), an analyst at Deutsche Bank wrote that the Company may be unable to raise capital as a result of this charge and could lose contracts as a result of the recall.

6.      As a result of this news, the Company's stock declined an additional $0.18 per share or nearly 13%, to close at $1.22 per share on March 28, 2012.

7.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company had severe manufacturing deficiencies at its Livonia, Michigan manufacturing facility, which produced defective prismatic cells that resulted in premature failure of battery modules and packs; (2) as a result of the defective prismatic cells,

A123 would likely be required to recall and replace the affected modules and packs and incur substantial costs in doing so, threatening the financial viability of the Company; and (3) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

10.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

11.      Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b) as A123's principal place of business is located within this District.

12.      In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.      Plaintiff, as set forth in the attached certification, purchased A123 securities at artificially inflated prices during the Class Period and has been damaged thereby.

3

14.     Defendant A123 is a Delaware corporation, with its principal place of business located at 200 West Street, Waltham, MA 02451.  A123's common stock trades on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "AONE."

15.     Defendant David P. Vieau ("Vieau") has been the Company's Chief Executive Officer ("CEO"), President and a director on the Board of Directors ("Board") since March 2002.

16.     Defendant David Prystash ("Prystash") has been the Company's Chief Financial Officer ("CFO") since May 12, 2011.

17.     Defendant John Granara ("Granara") served as the Company's Interim CFO between January 2011 and May 11, 201 and has served as the Vice President of Finance and Corporate Controller since January 2010.

18.     The defendants referenced above in ¶¶ 15 - 17 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     A123 develops, manufactures and sells advanced lithium-ion batteries and energy storage systems that deliver high power and energy density, long life batteries. The Company's technology enables customers to commercialize innovative products for the transportation, electric grid and commercial markets.  In the transportation industry, A123 works with major global automotive manufacturers and tier 1 suppliers to develop batteries and battery systems for hybrid electric vehicles ("HEVs"), plug-in hybrid electric vehicles ("PHEVs"), and electric vehicles ("EVs").  The Company designs and develops batteries and battery systems for BAE Systems ("BAE"), BMW AG ("BMW"), General Motors Company ("GM"), Fisker Automotive,

4

Inc. ("Fisker"), and Shanghai Automotive Industry Corp. ("SAIC"), and other customers, for multiple vehicle models.  In January 2010, the Company entered into a supply agreement with Fisker where it was designated as the supplier of battery systems for Fisker's Karma PHEV programs.

20.      On December 23, 2011, Defendant Vieau issued a statement concerning a battery recall involving the Fisker Karma, after determining that some of the battery packs it produced for Fisker "could have a potential safety issue relating to the battery cooling system." Viaeau further stated:

> Specifically, certain hose clamps that are part of the battery pack's internal cooling system were misaligned, positioned in such a way that could potentially cause a coolant leak.  Over time, it is possible that in certain rare circumstances, this coolant leak could potentially lead to an electrical short circuit.

21.      On December 29, 2011, Fisker recalled 239 Karma cars manufactured from July 1, 2011 through November 3, 2011, advising that certain clamps may have been positioned incorrectly during assembly with the high-voltage battery.

22.      On March 8, 2012, Consumer Reports reported that while conducting speedometer calibration runs on its test track with a Fisker Karma, the car's "dashboard flashed a message and sounded a 'bing' showing a major fault."

### Materially False and Misleading
### Statements Issued During the Class Period

23.      On February 28, 2011, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2010.  For the fourth quarter, the Company reported a net loss of $45.7 million, or $0.43 diluted loss per share ("LPS") and revenue of $24 million, as compared to a net loss of $22.3 million, or $.22 diluted LPS and revenue of $24.5 million for the same period a year ago.  For the year, the Company

reported a net loss of $152.6 million, or $1.46 diluted LPS and revenue of $97.3 million, as compared to a net loss of $85.8 million, or $2.55 diluted LPS and revenue of $91 million for the same period a year ago.

24.     On March 11, 2011, the Company filed an annual report for the period ended December 31, 2010 on Form 10-K with the SEC, which was signed by, among others, Defendants Vieau and Granara and reiterated the Company's previously announced annual financial results and financial position.   In addition, the Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendant Vieau and Granara, stating that the financial information contained in the Form 10-K was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

25.     The 10-K represented the following:

> Our cylindrical batteries are in volume production and are commercially available for use in automotive and heavy duty vehicles. Our next generation prismatic batteries are currently being produced in our Livonia, Michigan facility, which officially opened on September 13, 2010. This 291,000 square foot facility is designed to enable the complete production process, including research and development, manufacturing of high-value components, cell fabrication, module fabrication and the final assembly of complete battery packs ready for vehicle integration.
>
> ***
>
> *AMP20.* The APM20 (7.2 mm thick, 161 mm wide, 227 mm in height) is designed for high-power PHEV and EV applications. Our 20Ah building block for PHEV and EV applications is currently in production. This prismatic cell is an advanced high power and long-life lithium-ion energy storage solution for next-generation applications and is being used in the Fisker Karma PHEV, among other applications.
>
> ***
>
> Our prismatic battery system's design allows for various battery configurations, providing pack design versatility for the automotive market. This design reduces retooling time when reconfiguring our assembly lines for different customers. Our battery systems are highly engineered to incorporate safety and control features that extend life and improve performance. Module-level fusing, temperature sensing and other

safety controls provide additional containment safeguards to isolate and protect against cell-level failure. Active overvoltage protection provides monitoring and balancing of individual series elements to protect cells from abuse and to extend life. These battery systems are designed to accommodate either liquid or air-cooled thermal management systems, and have mechanical structures designed to withstand the harsh vibration and mechanical shock environment of automotive applications.

26.    On April 1, 2011, the Company announced the pricing of an offering of 18 million shares of common stock at a price of $6.00 per share and an offering of $125,000,000 principal amount of convertible subordinated notes due 2016.  The net proceeds from the sale of the common stock and the convertible notes were estimated to be approximately $102.7 million and $120.6 million, respectively.

27.    On May 9, 2011, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2011.  For the quarter, the Company reported a net loss of $54 million, or $0.51 diluted LPS and revenue of $18 million, as compared to a net loss of $29 million, or $0.28 diluted LPS and revenue of $24 million for the same period a year ago.

28.    On May 10, 2011, the Company filed a quarterly report for the period ended March 31, 2011 on Form 10-Q with the SEC, which was signed by Defendants Vieau and Granara and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed certifications by Defendants Vieau and Granara, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

29.    On August 4, 2011, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2011.  For the quarter, the Company reported a net

loss of $55 million, or $0.44 diluted LPS and revenue of $36 million, as compared to a net loss of $34 million, or $0.33 diluted LPS and revenue of $23 million for the same period a year ago.

30.     On August 5, 2011, the Company filed a quarterly report for the period ended June 30, 2011 on Form 10-Q with the SEC, which was signed by Defendants Vieau and Prystash and reiterated the Company's previously announced financial results and financial position.  In addition, the Form 10-Q contained signed certifications by Defendants Vieau and Prystash, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

31.     On November 9, 2011, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2011.  For the quarter, the Company reported a net loss of $64 million, or $0.51 diluted LPS and revenue of $64 million, as compared to a net loss of $44 million, or $0.42 diluted LPS and revenue of $26 million for the same period a year ago.

32.     On November 9, 2011, the Company filed a quarterly report for the period ended September 30, 2011 on Form 10-Q with the SEC, which was signed by Defendants Vieau and Prystash and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed certifications by Defendants Vieau and Prystash, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

33.     On March 8, 2012, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2011.  For the fourth quarter, the Company reported a net loss of $85 million, or $0.65 diluted LPS and revenue of $40 million, as

compared to a net loss of $46 million, or $0.43 diluted LPS and revenue of $24 million for the

same period a year ago.  For the year, the Company reported a net loss of $250 million, or $2.12

diluted LPS and revenue of $159 million, as compared to a net loss of $152.6 million, or $1.46

diluted LPS and revenue of $97.3 million for the same period a year ago.

34.     On March 12, 2012, the Company filed an annual report for the period ended

December 31, 2011 on Form 10-K with the SEC, which was signed by, among others,

Defendants Vieau and Prystash and reiterated the Company's previously announced annual

financial results and financial position.   In addition, the Form 10-K contained signed

certifications pursuant to SOX by Defendant Vieau and Prystash, stating that the financial

information contained in the Form 10-K was accurate and that they disclosed any material

changes to the Company's internal control over financial reporting.

35.     The 10-K represented the following:

Our cylindrical batteries are in volume production and are commercially available
for use in automotive and heavy duty vehicles. Our next generation prismatic
batteries are currently being produced in our Livonia, Michigan facility, which
officially opened in September, 2010. This 291,000 square foot facility enables
the complete production process, including research and development,
manufacturing of high-value components, cell fabrication, module fabrication and
the final assembly of complete battery packs ready for vehicle integration.

***

*AMP20.* The AMP20 (7.2 mm thick, 161 mm wide, 227 mm in height) is
designed for high-power PHEV and EV applications. Our 20Ah building block
for PHEV and EV applications is currently in production. This prismatic cell is an
advanced high power and long-life lithium-ion energy storage solution for next-
generation applications and is being used in the majority of our transportation
customers and a growing percentage of our grid customers.

***

Our prismatic battery system's design allows for various battery configurations,
providing pack design versatility for the automotive market. This design reduces
retooling time when reconfiguring our assembly lines for different customers. Our

battery systems are highly engineered to incorporate safety and control features that extend life and improve performance. Module-level fusing, temperature sensing and other safety controls provide additional containment safeguards to isolate and protect against cell-level failure. Active overvoltage protection provides monitoring and balancing of individual series elements to protect cells from abuse and to extend life. These battery systems are designed to accommodate either liquid or air-cooled thermal management systems, and have mechanical structures designed to withstand the harsh vibration and mechanical shock environment of automotive applications.

36.     The statements referenced in ¶¶ 23-25; 27-35 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them that: (1) the Company had severe manufacturing deficiencies at its Livonia, Michigan manufacturing facility, which produced defective prismatic cells that resulted in premature failure of battery modules and packs; (2) as a result of the defective prismatic cells, A123 would likely be required to recall and replace the affected modules and packs and incur substantial costs in doing so, threatening the financial viability of the Company; and (3) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

## THE TRUTH BEGINS TO EMERGE

37.     On March 26, 2012, the Company disclosed in a press release "that the company has launched a field campaign to replace battery modules and packs that may contain defective prismatic cells produced at A123's Livonia, Mich. manufacturing facility."  The press release also disclosed the following, in relevant part:

> A123 has begun building replacement modules and packs and expects to begin shipping them to impacted customers this week. The company anticipates that the cost of replacing the affected customer modules and packs will be approximately $55 million and expects it will be funded over the next several quarters….

> "Recently, A123 has discovered that some prismatic cells made in our Livonia facility may contain a defect which can result in premature failure of a battery pack or module that includes a defective cell. We have isolated the root cause of

the defective cells and we are confident that we have pinpointed the source of the defect and corrected it. As a result of engineering analysis and testing, we believe this is not a safety issue, and we have determined the root cause and have taken corrective actions," said David Vieau, CEO of A123 Systems. "We are working to get replacement packs and modules to impacted customers as quickly as possible. It is important to note that this defect has been discovered only in some prismatic cells manufactured at our Livonia facility. Prismatic cells produced at another A123 facility are not impacted. Further, the cylindrical cells we make at our facilities in China for a number of other transportation programs, as well as the majority of our grid energy storage systems and commercial applications, are also not affected by this defect."

38.     Later in the day, the Company held a conference call regarding the recall.  During

the conference call, Defendant Vieau admitted "that virtually all of the product that we produced

in [the Livonia facility] has been effectively contaminated by this particular defect."  Moreover,

Defendant Vieau disclosed the following, in relevant part:

A123 has discovered that some battery modules and packs produced with prismatic cells made in Livonia, Michigan manufacturing facility may contain a defect, which can result in premature failure of the battery pack or module, including a decrease in performance and reduced battery life.

*** 

Recently, a small number of battery packs in the field experienced a malfunction and when we inspected these packs to determine the cause, we discovered the existence of this defect.  Upon further investigation, we determined that the root cause to be the incorrect calibration of one of four automated tab welding machines in the prismatic cell manufacturing process at our Livonia facility.  This caused a misalignment of a certain component in some prismatic cells.

*** 

We have isolated the root cause of the defective cells to this single automated welding machine, and we've recalibrated it to conform with the other automated welding machines at the Livonia facility.

*** 

While we cannot discuss the specific customers that are part of this campaign, there are five transportation customer production programs that have received products from A123 that potentially have defective cells.  We are working with these customers to develop a schedule to get them replacement packs and modules

to quickly remedy the situation.  We have begun building replacement systems and expect to begin shipping them this week.

*** 

So while the initial rapid ramp-up of our Michigan operations to satisfy customer demand has resulted in near-term operational challenges, we are confident in our ability to overcome these issues.

39.     Immediately following the disclosure, Fisker announced "a significant upgrade to the VIP Customer Care Coverage included with the purchase of all 2012 Model Year Karma vehicles.  This new initiative will apply both to existing and future 2012 Model Year Karma customers."  Fisker further announced the following, in relevant part:

Fisker decided to make this enhancement in response to the fact that its high-voltage battery supplier, A123 Systems, discovered a latent manufacturing defect in some prismatic cells made in Livonia, Michigan facility that could result in battery underperformance and decreased durability.  As a result, A123 is replacing all impacted battery modules and packs for the Fisker Karma.

*** 

Fisker has been working closely with A123 Systems regarding a high-voltage battery power loss experienced in one of our customer's vehicles, belonging to Consumer Reports.

The problem was traced to the A123 battery pack by Fisker's Quality SWAT Team.

40.     On this news, A123's securities plummeted $0.21 per share or more than 12%, to close at $1.49 per share on March 26, 2012.

41.     On March 28, 2012, Galves wrote in a note to investors that the $55 million cost to replace the flawed battery packs and modules "represents a severe impact" on the Company's cash reserves.  Galves further concluded that: "We no longer have enough confidence that AONE can raise sufficient capital (without massive equity dilution) and/or continue to augment their book of future business.  Recent quality issues may lead to concerns over AONE's ability to

manufacture with quality at high volumes, potentially leading to customer defections or at least difficulty in procuring new contracts."

42.     As a result of this news, the Company's stock declined an additional $0.18 per share or nearly 13%, to close at $1.22 per share on March 28, 2012.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired A123 securities during the Class Period (the "Class"); and were damaged thereby.   Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, A123 securities were actively traded on the NASDAQ.   While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.   Record owners and other members of the Class may be identified from records maintained by A123 or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

46. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

47. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of A123;

- whether the Individual Defendants caused A123 to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of A123 securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

48. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

49. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- A123 securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold A123 securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

50.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## <u>COUNT I</u>

**(Against All Defendants For Violations of
<u>Section 10(b) And Rule 10b-5 Promulgated Thereunder)</u>**

51.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

53.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of A123 securities; and (iii) cause Plaintiff and other members of the Class to purchase A123 securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

54.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for A123 securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about A123's operations and business prospects.

55.     By virtue of their positions at A123, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

56. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of A123 securities from their personal portfolios.

57. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of A123, the Individual Defendants had knowledge of the details of A123 internal affairs.

58. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of A123. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to A123's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of A123 securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning A123's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased A123 securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

59. During the Class Period, A123 securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of A123 securities at

prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased said securities, or would not have purchased them at the inflated prices that were paid.  At the time of the purchases by Plaintiff and the Class, the true value of A123 securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of A123 securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

60.    By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

62.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63.    During the Class Period, the Individual Defendants participated in the operation and management of A123, and conducted and participated, directly and indirectly, in the conduct of A123's business affairs.  Because of their senior positions, they knew the adverse non-public information about A123's operations and financial prospects.

64.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to A123's operations, and to correct promptly any public statements issued by A123 which had become materially false or misleading.

65.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which A123 disseminated in the marketplace during the Class Period concerning A123's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause A123 to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of A123 within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of A123 securities.

66.    Each of the Individual Defendants, therefore, acted as a controlling person of A123.  By reason of their senior management positions and/or being directors of A123, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, A123 to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of A123 and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

67.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by A123.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: April 2, 2012

**BERMAN DEVALERIO**

/s/Kathleen M. Donovan-Maher
Kathleen M. Donovan-Maher (BBO #558947)
One Liberty Square
Boston, Massachusetts  02109
Telephone:  (617) 542-8300

**POMERANTZ HAUDEK
  GROSSMAN & GROSS, LLP**
Marc I. Gross
Jeremy A. Lieberman
100 Park Avenue, 26th Floor
New York, New York 10017-5516
Telephone:  (212) 661-1100

**POMERANTZ HAUDEK
  GROSSMAN & GROSS, LLP**
Patrick V. Dahlstrom
One North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone:  (312) 377-1181

*Attorneys for Plaintiff*

## Certification of Plaintiff
## Pursuant to Federal Securities Laws

1.    I, Scott Heiss, make this declaration pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995 as required by Section 21D (a) (2) of Title I of the Securities Exchange Act of 1934.

2.    I have reviewed a Complaint against A123 Systems, Inc. ("AONE"), and authorize a filing of a comparable complaint on my behalf.

3.    I did not purchase my AONE securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4.    I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of my purchases and sales in AONE securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.    The matters stated in this declaration are true to the best of my current knowledge, information and belief.

I declare under penalty or perjury that the foregoing is true and correct.

Executed _____3-30-2012_____, at _____Charlotte  Nc_____
              **(Date)**                                **(City, State)**

                                           _____
                                           **(Signature)**

                                         Scott Heiss
                                         **(Type or Print Name)**

A123 SYS INC                                           Heiss, Scott
CLASS PERIOD:  FEB 28 2011 through MAR 23 2012
               LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 5/13/2011 | PUR | 1,475 | $6.0100 |
| 6/16/2011 | PUR | 1,640 | $5.0500 |
| 6/28/2011 | SLD | 350 | $5.1500 |
| 6/28/2011 | SLD | 1,290 | $5.1000 |
| 1/26/2012 | PUR | 8,400 | $2.1700 |
| 2/3/2012 | SLD | 9,875 | $2.2700 |
| 2/16/2012 | PUR | 2,976 | $2.1100 |
| 2/17/2012 | PUR | 7,500 | $2.1600 |
| 2/24/2012 | PUR | 3,650 | $1.9600 |
| 2/28/2012 | SLD | 14,126 | $1.8800 |
| 2/29/2012 | PUR | 14,200 | $1.8700 |